IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LEONARD PURVIS, PATRICIA PURVIS, KENNETH BRYANT, and BEVERLY STARLING<br><br>       Plaintiffs,<br><br> v.<br><br>DOUGLASVILLE DEVELOPMENT, LLC,<br><br>       Defendant. | 1:06-cv-0415-WSD |

## ORDER

This matter is before the Court on Defendant's Motion to Dismiss Plaintiffs' Complaint [14], Plaintiffs' Response to Defendant's Motion to Dismiss [17], and Defendant's Reply In Support of Its Motion to Dismiss Plaintiff's Complaint. [22].[1]  Also before the Court are Plaintiff's Motion for Default Judgment [10], Defendant's Motion to Set Aside the Clerk's Entry of Default Judgment [13], and

---

[1] Plaintiffs also filed a Motion to Strike or to File Surreply to Defendant's Reply in Support of Its Motion to Dismiss [23].  Having considered the motion and supporting briefs, the motion is **DENIED**.  The Court will not strike Defendants' reference to the "permit shield" statute.  Defendant did not raise a new argument, but merely responded to an argument advanced by Plaintiffs.   Plaintiffs are not permitted to file a surreply brief to respond to Defendant's "permit shield" reference.  The reference is tangential to the substance of the present motions, and the Court does not require further briefing on the issue.

Plaintiffs' Brief in Opposition to Defendant's Motion to Set Aside Default Judgment [15].

## I.     BACKGROUND

This dispute concerns Plaintiffs' allegations that Defendant violated the Clean Water Act ("CWA"), 33 U.S.C. § 1251 et. seq. Plaintiffs are owners of real property near "The Tributary at Manchester," a development in Douglas County, Georgia. Plaintiffs allege a creek flows across this site and eventually empties into the Chattahoochee River. Plaintiffs allege that Defendant's development activities have increased the volume, velocity, and turbidity of water flowing through the creek in violation of the CWA and Georgia law.

On November 15, 2005, Defendant received a notice letter from Plaintiffs concerning Plaintiffs' intention to sue regarding alleged violations of the CWA. The six-page letter accused Defendant of diverting storm drainage, pollutants, and dredged materials into the waters around the Tributary at Manchester in violation of certain provisions of the CWA, provided a four-year time frame of alleged violations with representative dates, identified each Plaintiff by name and address, and provided the name, address, and phone number of Plaintiffs' counsel.

Plaintiffs filed their Complaint alleging violations of the CWA and Georgia

state laws on February 23, 2006.  On March 8, 2006, Plaintiffs served the Complaint and Summons on Defendant's agent.  Defendant did not file an Answer to the Complaint.  On April 14, 2006, Plaintiff's moved the Clerk of the Court to enter default against Defendant.  The Clerk entered default on April 17, and Plaintiffs moved for default judgment on April 19.  On April 24, Defendant moved to set aside the Clerk's entry of default.

Defendant claims that its default was the result of a misunderstanding between itself, its counsel, and Plaintiffs' counsel.  Defendant claims, and Plaintiffs do not dispute, that Plaintiffs contacted Defendant and told it that a Complaint was being filed, but that Plaintiffs were not yet seeking to serve the summons. (Def. Mot. to Set Aside Clerk's Entry of Default at 3.)  Defendant then claims that its counsel received a "courtesy copy" of the Complaint on March 6, but did not agree to accept service on Defendant's behalf.  Defendant claims that during these communications, Plaintiffs' counsel was willing to discuss settlement. (Id. at 4.)  Defendant claims it was "under the mistaken impression that, because its counsel was in direct discussions with Plaintiffs' counsel regarding service and other issues, the court papers had also been forwarded to [its counsel], and that [counsel] was aware of the service date and would file a responsive pleading on

behalf of [Defendant]."  (Id. at 4-5.)  Upon discovering the Clerk's entry of default, Defendant's counsel realized Defendant's misunderstanding regarding the responsibility for filing an Answer to the Complaint, and moved promptly to set the entry of default aside.

## II.     MOTION TO SET ASIDE DEFAULT

The Federal Rules of Civil Procedure have "a strong policy of determining cases on the merits. . ." In re Worldwide Web Sys., Inc., 328 F.3d 1291, 1295 (11th Cir. 2003).  Defaults are viewed "with disfavor."  Id.

Under Federal Rule of Civil Procedure 55(c), this Court can set aside the Clerk's entry of default "for good cause shown."  Good cause "is not susceptible to a precise formula, but some general guidelines are commonly applied." Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion, 88 F.3d 948, 951 (11th Cir. 1996).  The guidelines include:
(i) whether the default was culpable or wilful, (ii) whether setting aside default would prejudice the adversary, (iii) whether the defaulting party presents a meritorious defense, (iv) whether the case implicates the public interest,

(v) whether default would cause significant financial loss to the defaulting party, and (vi) whether the defaulting party acted promptly to correct the default. Id.

Defendant has shown good cause to set aside the Clerk's entry of default. The default appears to have been caused by an honest, if (perhaps) negligent, misunderstanding between Defendant and Defendant's counsel. Defendant claims an erroneous belief that its counsel knew it had been served, while its counsel claims an erroneous belief that Plaintiffs (or, presumably, the client) would notify them when service had been effected.[2] This situation is more excusable than one in which a party receives service and simply forgets to respond.

Plaintiffs will not suffer any prejudice if the entry of default is set aside, and the Court notes Plaintiffs have continued to prosecute their case vigorously without regard to the entry of default. While Defendant has not yet articulated its defenses on the merits, it should have an opportunity to do so. The public interest is best served by having the merits of the issues of this case adjudicated, especially since the issues touch directly on public rights. Defendant could suffer considerable financial loss if default judgment were entered. Defendant moved

---

[2] The Court excuses on this occasion the negligent lack of communication between Defendant and its counsel. This misunderstanding does not merit the harsh procedural penalty of default urged by Plaintiffs.

promptly to set the default aside. Considered together, the above factors demonstrate good cause to set aside the Clerk's entry of default.

## III.   MOTION TO DISMISS

Defendant moves to dismiss Plaintiffs' Complaint based on a lack of subject matter jurisdiction by this Court. Defendant argues that Plaintiffs' Complaint relies on federal jurisdiction founded entirely on the CWA allegations in the Complaint. Defendant argues that Plaintiffs are barred from asserting the CWA claim because they failed to satisfy the CWA's 60-day notice requirement.[3] Defendant argues that because Plaintiffs' notice letter is insufficient as a matter of law,  Plaintiffs' CWA claims are barred, depriving this Court of subject matter jurisdiction and compelling it to dismiss the Complaint.   The burden of proof is on the party alleging jurisdiction. Thomson v. Gaskill, 315 U.S. 442, 446 (1942).

The Clean Water Act allows a private citizen to bring a civil action on his own behalf against "any person . . . who is alleged to be in violation of . . . an effluent standard or limitation under this chapter." 33 U.S.C. § 1365(a)(1)(A). Section 1365 further provides that "[n]o action may be commenced" prior to 60

---

[3] Defendant admits it received a notice letter from Plaintiffs more than 60 days prior to the filing of the Complaint, and contests only the sufficiency of the notice.

days after the plaintiff has given notice of the alleged violation to (1) the Administrator, (2) the State in which the alleged violation occurs, and (3) to any alleged violator."

The contents of the notice are prescribed by federal regulation:

> Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, shall include <u>sufficient information to permit the recipient to identify</u> the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135.3(a)(emphasis added). Section 135.3 also requires the notice to "state the name, address, and telephone number of the legal counsel, if any, representing the person giving the notice." 40 C.F.R. § 135.3(c).

The Supreme Court, interpreting virtually identical language in the Resource Conversation and Recovery Act, 42 U.S.C. § 6972, held that the notice requirement was a mandatory precondition to suit, not subject to waiver or tolling. <u>Hallstrom v. Tillamook County</u>, 493 U.S. 20 (1989). The Eleventh Circuit has specifically held that notice under the CWA "is a mandatory condition precedent to the filing of a citizen suit under the Clean Water Act. If a plaintiff fails to comply

with this notice requirement . . . the district court is required to dismiss the action." National Environmental Foundation v. ABC Rail Corp., 926 F.2d 1096, 1097-98 (11th Cir. 1991).

Although the 60-day notice requirement is strict, the requirements regarding the contents of that notice are more flexible.  40 C.F.R. § 135.3(a) requires a notice letter to include " sufficient information to permit the recipient to identify" the who, what, when and where of the alleged violation, and the identities of the accusers.  The purpose of the notice requirement is "to give [an alleged violator] an opportunity to bring itself into compliance with the Act and thus likewise render unnecessary a citizen suit."  Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, 484 U.S. 49, 60 (1987).  See also Atlantic States Legal Foundation, Inc. v. Tyson Foods, Inc. 897 F.2d 1128, 1130 (11th Cir. 1990).  "In practical terms, the notice must be sufficiently specific to inform the alleged violator about what it is doing wrong, so that it will know what corrective actions will avert a lawsuit."  Atlantic States Legal Foundation, Inc. v. Stroh Die Casting Co., 116 F.3d 814, 819 (7th Cir. 1997).  See also Carney v. Gordon County, No. 4:06-cv-36, slip op. at 12 (N.D. Ga. September 12, 2006) (adopting legal standard from Stroh Die Casting).  To satisfy the notice requirement, Plaintiffs must "provide enough

information to enable both the alleged violator and the appropriate agencies to identify the pertinent aspects of the alleged violations without undertaking an extensive investigation of their own." Atwell v. KW Plastics Recycling Division, 173 F. Supp.2d 1213, 1222 (M.D. Ala. 2001).  See also Public Interest Research Group of N.J., Inc. v. Hercules, Inc., 50 F.3d 1239, 1247-48 (3d. Cir. 1995).

The notice letter sent by Plaintiffs provided the following information:

(1)  The name and address of each individual Plaintiff, as well as the name, address and phone number of Plaintiffs' counsel (Plaintiffs' Notice Letter at 2);

(2)  The names of the ten potentially responsible parties "involved in activities at the New Manchester sites," including Defendant (Id. at 3);

(3)  The nature of the alleged harm specifically was "the discharge of pollutants into waters . . . by excessive discharges of eroded soils, dirt, sediment, and debris . . ." (Id.)  The pollutants were specifically alleged to be "sediment, rock, sand, and dirt." (Id.)  The discharges were alleged to violate § 301(a) of the CWA "in that either a point source discharge permit . . . under Section 402 of the Clean Water Act" was "not obtained" or that "the terms of any such permit have been violated." (Id.)  The discharge of

"dredge and fill materials" in violation of § 404 of the CWA also were alleged for the same underlying conduct. (Id. at 4-5.)

(4)  The harm was alleged to have been caused by "land disturbance and other development activities . . . without proper installation and maintenance of all erosion and sediment control structures and measures in violation of Best Management Practices required by the CWA," causing the discharge of pollutants and pollutant-laden storm water in violation of §§ 301 and 402 of the CWA. (Id. at 4.)

(5)  The location of the harm was "The New Manchester sites" in Douglas County, Georgia.  The discharges were alleged to "flow into Sweetwater Creek, which is a tributary of the Chattahoochee River, and associated wetlands." (Id. at 3.)

(6) The time of the harm was "no later than March 21, 2002 and . . . presently occurring," including a set of 29 "sample listings" of specific dates ranging from March 22, 2002 to July 21, 2005. (Id. at 4.)

(7) The alleged conduct also violated numerous Georgia state laws. (Id. at 5.)

Defendant attacks the sufficiency of Plaintiffs' notice letter on several grounds, contending that Plaintiffs failed to provide adequate notice of the alleged violations, failed to identify sufficiently the persons responsible for the alleged violations, raised allegations contradicted by the Complaint, failed to raise all of the claims later alleged in the Complaint, and that the notice is technically deficient.

Defendant first argues that the notice letter did not provide adequate notice of the alleged violations because it accused Defendant of <u>either</u> discharging pollutants without a permit <u>or</u> violating the terms of a permit. Defendant contends that this disjunctive contention is "inherently contradictory" and "clearly does not provide . . . sufficient information to identify the specific standard or limitation alleged to be violated." (Def. Mot. to Dismiss at 11.) This Court disagrees. Plaintiffs' notice is merely alternative; it is not "inherently contradictory." The allegation, although disjunctive, put Defendant on notice that it should investigate whether the level of pollutants -- specifically sediment, sand, rock, and dirt--being discharged by its activities around the Tributary at New Manchester violated a permit requirement or exceeded a permit in Defendant's possession. This portion of the notice informs Defendant about two specific, if alternative, wrongs it may be

committing based on the same alleged conduct, gives Defendant sufficient notice to identify the pertinent aspects of the alleged violation, and is thus sufficient. See Carney v. Gordon County, No. 4:06-cv-36, slip op. at 12 (N. D. Ga. September 12, 2006).

Defendant also argues that the notice letter's allegations are insufficient because Plaintiffs "fail to identify (1) what specific activities have resulted in discharge of dredged or fill materials[], (2) the specific identity or location of the navigable waters or wetlands into which dredged or fill materials have been deposited, or (3) how the alleged filling of navigable waters or wetlands is differentiated from Plaintiffs' allegations regarding the discharge of pollutants." (Def. Mot. to Dismiss at 15.)  Defendant's argument is without merit.  The notice alleges that Defendant, during land development activities, discharged dredged or fill materials around the New Manchester Tributary, which drains into Sweetwater Creek and then the Chattahoochee River.  The notice alleges that the discharges were caused by Defendant's failure to implement appropriate sediment and erosion control structures.  The notice provides Defendant with sufficient information to identify the pertinent aspects of Plaintiffs' charges without extensive investigation and gives Defendant opportunity to bring itself into compliance with the CWA,

and is thus sufficient. See Atwell, 173 F. Supp.2d at 1222.  See Tyson Foods, 897 F.2d at 1131.  40 C.F.R. 135.3 imposes no obligation on Plaintiffs to "differentiate" the legal consequences of their claims. Cf. Public Interest Research Group of N.J., Inc. v. Hercules, Inc., 50 F.3d 1239, 1248 (3d. Cir. 1995)("Nor is the citizen required to describe every ramification of the violation.")

Defendant next argues that the notice letter fails to identify the "person or persons responsible for the alleged violation[s]." (Def. Mot. to Dismiss at 12.) Defendants argue that the notice is inadequate because it "lists ten different entities as potentially responsible parties, but fails to provide any notice regarding which particular entities are responsible for . . . particular violations." (Id.)  The notice letter puts Defendant on notice that it could be responsible for the entirety of the specific conduct alleged to violate the CWA, and that it should investigate its conduct in the area around the Tributary at Manchester if it wished to avoid a lawsuit.  The statute and its implementing regulations require no more.  Stroh Die Casting Co., 116 F.3d at 819.  That the notice also mentions other parties who may have contributed to the alleged CWA violations does not affect the sufficiency of the notice as to Defendant.

Defendant next argues that the notice is insufficient because it was "contradicted" by the Complaint. Defendant specifically claims that the notice letter contends that the alleged violations began in "no later than March 21, 2002," but the Complaint alleges that the violations began "by early 2004." (Def. Mot. to Dismiss at 14.) The Court disagrees that these statements are contradictory, and, even if they were, it would not affect the sufficiency of the notice. Events that occurred "no later" than 2002, as alleged in the notice, also occurred "by 2004," as alleged by the Complaint.

Even if Plaintiffs narrowed in the Complaint the time frame of their allegations, this increased precision does not retroactively render the notice insufficient or invalidate the Complaint. The notice alleges a reasonably specific time-frame for Defendant to examine its conduct, and is sufficiently specific to enable Defendant to evaluate its conduct. This satisfies the CWA. See Stroh Die Casting Co., 116 F.3d at 819-20.

Defendant next argues that Plaintiffs' Complaint exceeds the scope of the notice letter. Defendant argues the Complaint alleges that "the turbidity of discharges from the Tributary at New Manchester . . . has exceeded allowable [permit] limits," but the notice letter does not give adequate notice of a permit

14

violation.  (Def. Mot. to Dismiss at 16-17.)  Defendant's argument is not persuasive.  The notice letter puts Defendant on notice that it might have violated "the terms of any . . . permit obtained."  As discussed above, the mere fact that the notice alleges a permit violation in the alternative does not hamper the sufficiency of the notice.  Further, Plaintiffs have no obligation "to identify every detail of a violation" as long as they provide sufficient notice that "in investigating [the noticed] aspect of a parameter violation . . . other [unmentioned] aspects of that violation . . . will of necessity come under scrutiny."  Hercules, 50 F.3d at 1247.

      Finally, Defendant argues that the notice letter is technically deficient because it does not include each individual Plaintiff's phone number.  Section 135.3(a), however, only requires information <u>sufficient information to permit Defendant to identify</u> Plaintiffs' phone numbers.  By providing the phone number for Plaintiffs' counsel, the notice fulfills the regulatory mandate.  See Carney v. Gordon County, No. 4:06-cv-36, slip op. at 16 (N.D. Ga. September 12, 2006) (mere "failure to provide the sender's phone number does not warrant dismissing a complaint pursuant to 40 C.F.R. § 135.3.").

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Default Judgment [10] is **DENIED**. Defendant's Motion to Set Aside Clerk's Entry of Default [13] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss [14] is **DENIED**. Plaintiff's Motion to Strike or to File Surreply to Defendant's Reply in Support of Its Motion to Dismiss [23] is **DENIED**.

**SO ORDERED**, this 9th day of November, 2006.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE